You may proceed. Thank you very much. Good morning, Your Honors, Counsel, and may it please the Court. I have the privilege of representing the appellant Gary D. Brunckhorst in this case and in this appeal. Would you raise the lectern a bit and speak directly into the... I think there's a button off to the side. Okay. Thank you, Your Honor. This is an important case at an important time in our country's workplace. The federal and state laws which provide for rights to disabled employees in our nation's workforce include the Americans with Disabilities Act, the ADA, and the Minnesota Human Rights Act. These laws guarantee that employees will not be subject to discrimination in employment because of their disabilities. If the employees require reasonable accommodation to overcome impairments to enable them to perform the essential functions of their position, the employees will provide such reasonable accommodation, that employers will work with employees, engage in an interactive dialogue with employees to determine the means of overcoming impairments to performing the essential functions of the position, and that employees will not be discriminated against or retaliated against should they report or complain about discrimination or perceive discrimination in their employment. Mr. Brunckhorst's complaint in this action alleges that he was denied each of these protections by his employer, the appellee, the City of Oak Park Heights. Now, perhaps I can provide my own editorial comment, and that is that these laws were designed for specific circumstances and specific employees such as these. But to be clear, Mr. Brunckhorst is not asking this Court to like his claims, believe his claims, or to dislike or not believe the City's defenses. Rather, he's also not asking the Court to expand the reach of the ADA or the construction of various of its terms or the defined terms or the protections of the Act. What he is merely asking is that whereas here there are disputed facts and inferences from those facts which are important to the outcome, that jurors, not just court judges I say with due respect, should decide such facts and such claims on summary judgment motions. However, I should also say, again in my judgment, and I say this with respect, that this employer's actions in response to this employee's request for reasonable accommodation and interactive dialogue can't be, as a matter of law, the standard for employers to follow in response to employees' requests such as this. In my judgment, this is not how this delicate law, this important law, is supposed to work. Now, in mid-April of 2014, Mr. Brunckhorst, then a 15-year employee of the City who was performing his job satisfactorily, randomly contracted a horrific bacterial disease which produced acute flesh-eating bacteria which resulted in acute organ failure and produced, and still produces, significant residual pain, movement impairments and restrictions, and mobility impairments. His life has not been the same since that day. He has been disabled since that day, and he has not worked a day since that day, notwithstanding his earnest efforts to do so and his desire to do so. In our brief and at pages 10 through 13 of our reply brief, we've outlined the sequence of events which occurred, which we believe are important to the whole story, not a selective exception of the factual record, but as a part of the whole factual record, which we believe would be important to a reasonable person in deciding whether or not the parties met their respective obligations, given their respective rights and obligations under the Act. Mr. Brunckhorst, at the time, was performing his job well, had done so for 15 years. When his disability occurred, he was promised by his supervisor that his job will be here for you when you need it. He was repeatedly informed through the date of his termination that he was being granted leave as a reasonable accommodation. Well, as you said, on these pages of the reply brief that you mentioned, time after time, you're alleging, or Johnson falsely informed your client about this, that, and the other thing. Very serious accusation to make against an employer who, in other respects, from my standpoint at least, seemed to have almost bent over backwards to accommodate your client. It did so with respect to leave, Your Honor, with respect to leave time. But leave time, the Seventh Circuit might suggest, leave time is not a form of reasonable accommodation, or at least multi-month leave, beyond FMLA, is not really a factor in your underlining claim that these other things were falsely represented to him? Right, because I think that that goes to the fact that as long as he stayed out of work, the city was accommodating the leave as reasonable accommodation. It stated so, but when it came back to overcoming the impairments, leave did not do that. Leave didn't help him perform the essential functions of his job, or to overcome the pain, mobility, and movement issues. Well, you do have your finger, I think, on the key issue, because it says at the bottom of page 12 of your brief, working remotely from your home will not allow you to perform the essential functions of your position, nor is it practical, nor is it a practice that the city has permitted. Address that, because I think that is the core of the case. That is the city's contention, but there is a contrary factual record about that. And Mr. Brunkhorst himself testified as to what his duties were, what his essential functions were, and he testified that he would be able to provide, to perform those essential functions remotely with modest accommodations as far as configuration and set up, but his job was made... And somebody delivers stuff to him, right? Only if there was need to deliver paper stuff. Most of his job was computer and desk work, or phone work, and could be done remotely, at least for a period of time. Now, we're not contending that this should have been a lifetime accommodation. We are suggesting, though, with respect to his gradual transition back into the workplace, it should have been tried, it should have been considered, and especially where the city has testified during depositions, that they couldn't say that they couldn't do it. In other words, it was doable. It was a double negative in terms of how it was stated, but the result of which is that it was doable and would not cause undue hardship, at least for a period of time. But that's the... Part of the magic of the interactive dialogue is that it's supposed to be flexible, it's supposed to be informal, and it's supposed to be interactive. Not just launch a one-time take-it-or-leave-it offer of accommodation, whether or not it even hits the impairments, and I suggest that the city's one-time take-it-or-leave-it offer of 28 days of part-time work at a specific location during specific hours, during specific days... I thought that your client admitted that working from home would not allow him to do some of the IT functions, and some of the paper processing, and some of the other items. I thought that was admitted by your client. Well, it was a part of the record, and what he was saying by that, Judge, is that the way that things were set up before, some things that were on paper, it really could have been scanned and sent to him. For example, the checks, or getting the checks to him and back from him, or time sheets. That involves somebody scanning it, you get the point. Yes, that's right. Go ahead. And with respect to an aspect of the job that he had been performing, even though it was not in his job description at the time his leave began, an aspect of it was that he was the computer guy, the tech guy, who when the computers would come, he would order the computers, he could do that by phone or by other means, didn't require a physical present, but he would be the guy that would hook them up. The person to whom his job functions were outsourced to a third-party vendor, both during his disability and after he was terminated. So they were not in his, even though it's interesting too, that while he was on leave, his job description was revised at the direction of the city administrator, and now included those duties, even though they weren't performed by someone else. Remind me what your client said as to why he wouldn't accept the accommodation that the city offered. Well, the city... Part-time employment. Yeah, it was only for 28 days, and it would not, the city would not consider any remote work. And it didn't... I understand that. I understand that. I'm saying, why was that necessary in his view? Why couldn't he work 28 days, four hours a day at the employment site? Because of his lack of mobility, because of his movement restrictions, and because of the pain. Each day involved morphine and oxycodone. He had, he would experience pain flashes where he said in testimony that his office was not configured to allow him to raise his feet when those pain flashes, which are unpredictable and regular, but when those occurred, he would need to be able to move about, to move his legs, to wiggle his toes But also, it is complicated for a disabled person to get to work when he is a Wisconsin resident, lives in western Wisconsin, working in eastern Minnesota. So the mobility services and so forth, which he was just beginning to explore, it's difficult for him to literally get to work. He can't walk, can't stand, or can only do so for very short periods of time. But even his doctor, there are two aspects of accommodation that he had requested. He had requested 120 days of part-time work with the ability to work from home. And that was addressing the functional limitations, as he saw them. The doctor had also submitted on his behalf a part-time, four hours per day, for two months. Because the doctor was addressing the medical issues. The doctor was very concerned about him going back to obviously the issues and the problems and the physical impairments which he suffered. But the city didn't grant either one of those. It didn't do a study. It didn't do an analysis. In fact, it said it was doable. It could have done them. It just said no. It gave him a one-time, take it or leave it, 28 days, four hours a day, specific hours of the day, specific days at a specific location. Mr. Brunkhorst was concerned that that was not going to be sufficient to enable him to overcome the three impairments, which are a matter of record, as far as that would be impeding him in his ability to perform his essential functions. I see this case in some ways like a case decided a week ago, in which I believe Judge Jebentin was involved. It was the Edwards versus Salter case. It was a housing case. And in the housing case, the apartment manager was deemed not to have offered reasonable accommodation to an applicant because it had policies with respect to income verification that had to be provided. The court in that case deemed that the reasonable accommodations offered by the apartment manager did not permit the fostering or the achieving of the goal of the Fair Housing Act. This is an analogous case, but in the employment area, because the reasonable accommodation should be an assistance to get past the impairments, to deal with the impairments that are preventing an employee from performing the essential functions of the position. Now, again, we're not saying that it should have been a for the rest of life kind of thing with respect to remote work, but there's no reason why it couldn't have been tried. In your view, what issue would be presented to the jury if we sent this back to trial? I'm sorry, Judge? What issue? How would you phrase the instruction of the jury? You don't have to grant the client a lifetime appointment? Well, we're talking, well, first of all, we have reasonable accommodation, interactive dialogue, disability, retaliation, and then whether there is evidence of pretext. That's not a statement of what the issue would be to the jury. That's just a laundry list. No, I understand. What would be the issue presented to the jury if we ruled in your favor? Whether or not, given the facts and the inferences which a jury may draw from the facts, permit a conclusion that reasonable accommodation, effective reasonable accommodation, was not offered or provided by the employer to the employee. Once the employee, of course, raises the issues with respect to the impairments and need for accommodation, it's the employer's is sufficient to permit the employee to, and effective to permit the employee to get past the impediments and the impairments. Is there some time for a double? Yes, thank you. So I don't interrupt you then. I'm looking at page seven of your reply brief and what you point out that we should be aware of the widening concerns regarding the judiciary's apparent misapprehension or misapplication of the standards. What's your strongest case for you that our court has issued? You mentioned one from last week, but are there one or two? Well, I guess they're set forth in your brief, but if you had to identify one or two cases, well, again, would you say? Well, again, it's from the Eighth Circuit. We talked about the Felstad case and- Felstad, yes. The Pizza Hut case from Yankton, I guess it was, or wherever. That's right. And we had also mentioned the Cowitz case versus the Trinity Medical, Cowitz, K-O-W-I-T-Z. But this remark also relates to the Tolan versus Cotton or Cotton versus Toll case, U.S. Supreme Court case 2014. The court may anecdotally be or not anecdotally be interested in Judge Bennett's article, law review article. And of course, we cited also the ABA's recent book, 2017, regarding impediments that face employment discrimination plaintiffs. We'll give you back your minute and a half that I took from you for rebuttal. Thank you, Judge. We'll hear from counsel or the defendant. Yes, Your Honor. You may proceed. May it please the court. I'm Julie Fleming Wolfe and I represent the City of Oak Park Heights. The problem with plaintiffs' disability discrimination claims is that they're based on the incorrect notion that he was entitled to the accommodation that he chose. So that any failure to give it to him was a failure to accommodate and to engage in an interactive process and was discrimination and retaliation. But the ADA requires employers to reasonably accommodate disabled employees. It does not entitle a disabled person to the job or the of his choosing. In this case, the city offered the plaintiff a reasonable accommodation, one that was importantly consistent with and based on his doctor's stated limitations about his return to work. But he demanded a different accommodation than what the doctor said was necessary. The doctor did not say that he needed to work from home or that he could not return to work. But nevertheless, the plaintiff refused to return to work unless he got the accommodation that he wanted, which was to work from home. Let's go carefully to what the doctor said. The doctor said part-time? Did the doctor say four hours a day? Yes. What else did the doctor specifically say? The doctor filled out, not much, but the doctor filled out a workability report. And he said he was limited, the plaintiff was limited to four hours a day. And then there were some lifting and standing restrictions. The job, it's undisputed, was a desk job. And there was also a, he couldn't climb stairs restriction. But there were no stairs. The doctor, so the limits that the doctor placed on his return to work is what the city based their agreement to allow him to return to work, working four hours a day, this graduated return to work that he requested. Now, the plaintiff says that the district court erred in concluding... Did the doctor say 60 days? The doctor did not say 60 days. What he said was he can return to work on March, I believe it was 18th, until that these restrictions were from March 18th, which is when he filled out the workability report, to May 18th. That's two, the two months. That's 60 days. 60 days of two months. Yes, excuse me. So he didn't say 60 days from whenever he comes back. The problem is the issued that return to work workability report. He didn't return to work until the city said, you have to come back. He wasn't coming back under the conditions that the city proposed. And so the city finally said, you've got to come back by, I believe it was April 1st. But the doctor's restrictions said they're good until May 18th. And so that's when, we'll you this four-hour limitation until May 18th, and then we'll need you to give us a new medical certification from the doctor to see, and the letter from the city says, to see whether this needs to continue, or you can increase your hours, or you can come back full time. Now, to establish... Let me take a step back. The plaintiff in this case says that the district court erred in concluding that he failed to present a prima facie case of a failure to accommodate. But the plaintiff's case relies on looking at what the city would not do, and not at what the city did. To establish a prima facie case of disability discrimination for a failure to accommodate, the plaintiff has to show that he's a person with a disability, which was assumed for the purposes of summary judgment, that a reasonable accommodation was possible, and that the city failed to reasonably accommodate him, and there was not, it's not because there was an undue burden. Now here, the undisputed evidence showed that he asked for leave as a reasonable accommodation several times. The city gave it to him for many, many months beyond his FMLA leave, and after that for an additional, I believe, six or seven months, and that he asked for, based on his doctor's workability report, the reasonable accommodation of working only four hours per day for a period of time. The city granted that. So the undisputed evidence showed that there was a reasonable accommodation, and the city gave it to him. Now he says, the plaintiff argues, that there was a failure to accommodate because, and we'll focus, I see the court is focused on this, failure to let him work from home, and the plaintiff argues that's a per se violation of the city's duty to reasonably accommodate, to not let him work from home. This relies, this argument relies on the EEOC guidance, but the plaintiff doesn't meet the requirements for application of that guidance, primarily because it says an employee should, an employer, excuse me, should modify its work policy or its policy about where work is performed if it's needed as a reasonable accommodation, and it effective. And how was he unable to meet those restrictions? Because the accommodation was not needed. Even plaintiff testified, he could have performed, and it's at JA 342 of his deposition testimony, he was asked by me, can you perform all of these, could you have performed all of these functions at City Hall? Was your, did your disability prevent you from doing that? He said, no, but working from home would have been easier. Not that it was necessary, but that it would have been easier. Part of his argument was, he couldn't drive, he couldn't get there. Part of his argument was, yes, but in fact, he also testified, when the city said, you know, we want you to come back to work now, starting in December of 2014, he was looking at ways to get to work. It's not the city's obligation to get him to work, first of all, but he was looking at Metro Mobility, and the problem was not that the city was failing to accommodate him, it's that because he lived in a different state, he was having problems that he was still looking at, resolving, getting the two agencies, governmental agencies, to work together to get him there. So, so. So why, and therefore it's not, it doesn't count as a need for an accommodation, you mean, because the problem isn't caused by, I don't understand the argument. Right. He's saying, because I have a disability, and because I live where I do live, I can't get transportation to work, so I'm seeking work from home. And you say, well, that's because you live in Wisconsin, that's not our problem? Right. No, that's not what I meant to say. Well, that's sort of what I was hearing. But I would submit it's not the city's obligation to get him to work. There's a lot of reasons why somebody might not be able to get to work that have nothing to do with a disability to drive to work. But beyond that, and Mark. His point was, in my case, it is my disability that prevents me from. Right. But he was, at the time, well, two things. First of all, his doctor did not say he couldn't drive. His doctor didn't say he had to work from home or couldn't get to work. His doctor said he could work four hours a day at the city hall, was the assumption, because the job description that was given to the doctor for purposes of his evaluation described the work environment as the office. So that's one thing. But the other thing is, at the time that he was thinking about coming back to work, before he refused to, he was looking at ways to resolve that. And it just had never been concluded. So he wasn't saying I can't get into work yet. He was saying he's working on trying to get these two agencies to work to get him there. So there was no conclusive evidence that he could not have gotten to work. He testified the way that he got around during that time was he was getting rides from family members when he needed it. So it wasn't necessary. He didn't need to work from home, at least based on the reasonable, based on his own testimony. He said his disability did not require him to work at city hall. What about the question whether he could have performed the job from home? Did the city say it was doable? What the city administrator said was essentially it's not impossible. So he said it wouldn't have been, could we have done it? We couldn't. He said a double negative. It was something like it couldn't not be done or something. In other words, what he was saying was it wouldn't have been impossible, but it would not have been reasonable because there were many essential functions of his job that he couldn't do from home. The city administrator testified on the same page of his testimony where he says, he's asked basically, was it possible? And he said, well, it might've been possible, but it wouldn't have been reasonable. He had to interact with other employees. He had to be supervised. And the law says that in this district, in fact, in the Felstead case says that an employer doesn't need to reallocate or eliminate job functions to accommodate a disabled employee. It's not the employer's obligation or the employer is not obligated to reassign existing workers to assist in the performance of essential duties. So to the extent he would have needed somebody to, he testified, he would have needed somebody to come by his house before and after work. There was an employee who lived by him to pick up things every day or to drop off things. Well, much as you might dislike the very thought of this question we asked your opponent, if this case went to a jury, what issue would they be required, called upon to decide? What questions? Well, they say we don't agree with the doctor's limitations or we don't agree that this man could not drive. Is that the other thing? No, no. I think your honor, the question would be, did the city provide a reasonable accommodation? And then there would be right. And then there would be some. And the arguments would be on both sides. Mr. Glennon would say it would be eminently reasonable to make these minor bonifications. So this, my client could work at home. And there would probably be instructions regarding what is and isn't required of an employer when reasonably accommodating, such as the limitations that I just spoke of in the Felstead case, where you don't have to assign other people to do your job or reallocate duties. So, so the, the, what the district court did in this case was to say the plaintiff failed to present a sufficient prima facie case of a failure to reasonably accommodate because he told, the plaintiff told the city, here is what I need through the doctor's workability report. And the city gave it to him. In fact, I want to point out one, one other thing quick before my time runs out. In that regard, in the letters that his attorney was sending back and forth starting in like February until the time of his termination, where he was saying, you're not engaging in the interactive process. You're not talking to us. He can't, he needs to work from home. He said the basis for that assertion is the doctor's workability report, but the doctor's workability report doesn't say that. It says it lists a four hour limitation and other restrictions on lifting and standing that could have been met, were being met by the, there didn't need to be additional accommodation. So even the plaintiff was relying on what the doctor said. So it would be reasonable for the city to accommodate the only accommodation request that the doctor and the plaintiff said was necessary. And another thing in that regard is the plaintiff never said during any of this time, he said, look at the doctor's note for what my limitations are, but he never said, I can't drive. I can't get there. He didn't say that before his termination. He said, the reasons I'm asking to work from home are in the doctor's workability report. And that's important to remember when assessing whether the city acted reasonably in this case. In other words, one way of recapitulating your most recent argument, the last statement was that the plaintiff's own testimony belied his present claim of ability to work? Yes, your honor. You wouldn't put it in those terms, but is that a fair summary? I might not go quite that far, but I think it's accurate. I appreciate your candor. Do you have further questions? We thank you for your argument. Thank you, your honor. Mr. Glennon has some time, I believe. He does. Did you want me to add time? Yes, if you would, please. Thank you very much for the courtesy. And I'll try to keep my remarks on point and in responsive to Ms. Fleming-Wolf's comments. At the end of her discussion with your honors, Ms. Fleming-Wolf referred to a letter. I would request that the court review JA-261-3. It is my April 14, 2015- Yeah, let me jot that down. Yes, sorry. JA-261-3. It is a three-page letter which set forth complaints about the city not engaging in interactive dialogue, not providing reasonable accommodation, which was ineffective. It did not say, look at the doctor's workability report with respect, and that the request for accommodation is based on that, because it wasn't. Accommodation was based both on the functional limitations noted by Mr. Brunkhorst and the doctor's medical limitations and so forth that he filled out at the request of the city to determine that he was in fact fit to return to work. I just have to briefly note EEOC guidance 18, which provides that if an employee is granted leave as reasonable accommodation, the employee is entitled to return to the position unless it would impose undue hardship. Also, guidance 34, that the employer must consider the modification of its rules or policies with respect to where work is performed to consider remote work if it would be effective and if it would not produce undue hardship. Mr. Brunkhorst testified that it would be effective, and Mr. Johnson of the city testified that it would not be undue hardship. Otherwise, what good is the leave? If the employer's job is changed or eliminated, there's no elimination here, by the way. His job existed. It was just being performed by someone else. This is a reshuffle of his functions to another employee who was an equal employee because they both worked the same job but at different times. He was out, she was in, even though the seniority ordinance should have permitted him to be restored to the position upon the conclusion of his leave. Thank you for your argument. The case is now submitted and we will take it under consideration.